UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

FREDDIE L. MCKNIGHT III,

        Petitioner,

           v.                          CAUSE NO. 3:14-CV-625-JD-MGG

WARDEN,

        Respondent.

## OPINION AND ORDER

Freddie L. McKnight, a prisoner without a lawyer, filed an amended habeas corpus petition under 28 U.S.C. § 2254 to challenge his conviction for cocaine dealing under Case No. 20C01-606-FA-49. ECF 1. Following a jury trial, on December 7, 2006, the Elkhart Circuit Court sentenced him to forty-eight years of incarceration.

## BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> The relevant facts indicate that on May 31, 2006, "a cooperating source working with Officer Shawn Turner of the Elkhart County Interdiction and Covert Enforcement Unit purchased 8.709 grams of cocaine freebase or crack from McKnight." Specifically, under the direction of Officer Turner, cooperating source Mickie Rhymer called McKnight and arranged to buy a quarter ounce or "quad" of cocaine from McKnight. Officers searched Rhymer, gave her $500 of photocopied cash to cover the drug purchase and a debt owed by Rhymer to McKnight, and wired her with a recording device. Rhymer and an undercover officer traveled to a

residence in Rhymer's vehicle. Rhymer entered the kitchen of the residence, where she saw McKnight and scales with a bag of cocaine on it. Rhymer spoke with McKnight, and he indicated that he was giving her a little "extra" cocaine. Rhymer gave McKnight $500 in cash, and he gave her the bag later found to contain over eight grams of cocaine. Rhymer left the residence, was again searched by officers, and was found to only have the cocaine that she purchased from McKnight. As a result, the State charged McKnight with class A felony dealing in cocaine weighing three grams or more. Following a trial held on November 13 and 14, 2006, a jury found McKnight guilty as charged. The trial court imposed a sentence of forty-eight years.

ECF 36-16 at 2-3; *McKnight v. State*, 1 N.E.3d 193, 197–98 (Ind. App. 2013).

On February 14, 2008, the Court of Appeals of Indiana affirmed the sentence on direct appeal. ECF 36-8. On March 24, 2008, the Indiana Supreme Court denied the petition for transfer. ECF 36-3 at 2. On March 26, 2009, McKnight initiated post-conviction proceedings in the Elkhart Superior Court, and that court denied his petition for post-conviction relief. ECF 36-2. On December 31, 2013, the Court of Appeals of Indiana affirmed the decision of the lower court. ECF 36-16. On July 30, 2014, the Indiana Supreme Court denied McKnight's motion to file a belated petition for transfer. ECF 36-20.

On March 31, 2014, McKnight filed the petition initiating this habeas case, and he later amended it. ECF 1, ECF 6. In the amended petition, McKnight argues that the trial court erred by failing to dismiss a biased juror and that the prosecution failed to disclose material impeachment evidence related to Mickie Rhymer. He further argues that trial counsel erred by failing to investigate and cross-examine Rhymer, by failing to object to the admission of an audio recording, by failing to move for a directed verdict based on insufficient evidence in relation to the weight of the cocaine, and by coercing

2

him into informally accepting a plea deal.[1] Additionally, he argues that appellate counsel erred by failing to raise on direct appeal the admissibility of the audio recording and insufficiency of the evidence in relation to the weight of the cocaine.

## PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

---

[1] As detailed below, McKnight later declined to formally accept the plea agreement before the trial court and proceeded to trial.

McKnight presented his claim that the trial court erred by failing to dismiss a biased juror to the Court of Appeals of Indiana and the Indiana Supreme Court on direct appeal. ECF 36-6; ECF 36-9. At the post-conviction review stage, McKnight did not present his claim that trial counsel coerced him into accepting a plea deal to the Elkhart Circuit Court.[2] PCR App. 106-23. Further, the Indiana Supreme Court rejected the petition for transfer referencing his claims of prosecutorial misconduct and ineffective assistance of counsel, as detailed above, as untimely pursuant to Ind. R. App. 57(C). ECF 36-19. Therefore, the claims of prosecutorial misconduct and ineffective assistance of counsel are procedurally defaulted.

McKnight asserts that the court should excuse procedural default because he proceeded pro se during post-conviction review. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). "Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him impeded his efforts to comply with the State's procedural rule." *Maples v. Thomas*, 565 U.S. 266, 280 (2012). As a general rule, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as cause." The exception is that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a

---

[2] While this claim may have been raised before the Elkhart Circuit Court by presenting it in various filings or at a hearing, McKnight did not raise it properly by including it in the operative petition, and, as a result, the Court of Appeals of Indiana considered the claim waived. ECF 36-16 at 11 n.5.

prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Brown v. Brown*, 847 F.3d 502 (7th Cir. 2017).

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Martinez*, 566 U.S. at 14.

McKnight raised each of his ineffective assistance of trial counsel claims before the Elkhart Circuit Court except for the claim that trial counsel coerced him into accepting a plea deal, so that claim is the only one of McKnight's claims that qualifies under these parameters. PCR App. 106-23. "[A] prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14. As detailed below, the court finds that the claim that trial counsel coerced him into accepting a plea deal is not substantial and declines to excuse procedural default.

McKnight asserts that the court should excuse procedural default for the remaining claims because correctional staff did not promptly mail his motion for a rehearing, which, in turn, caused him to file an untimely petition to transfer. The Warden responds that McKnight's failure to follow institutional procedures for legal

mail caused the untimely nature of the motion for rehearing. The Warden contends that McKnight instructed the mail room staff to send the filings to the law library for copying, binding, and mailing and that, absent these instructions, the mail room staff would have promptly mailed the filings, resulting in a timely filing. McKnight replies that he needed to send the motion for rehearing to the law library for copies in order to satisfy his service obligations to opposing counsel. After consideration of these arguments, the court finds that these circumstances present a difficult question on whether the petitioner has sufficiently demonstrated cause-and-prejudice to excuse procedural default. However, as discussed below, this case does not turn on this question, so the court will assume without deciding that McKnight has demonstrated cause and prejudice and consider the merits of his claims.[3]

<u>STANDARD OF REVIEW</u>

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3] Notably, federal courts have the discretion to consider claims for habeas relief under certain circumstances even if such claims are procedurally barred. 28 U.S.C. § 2254(b)(2).

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S. Ct. at 1376. Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

<u>ANALYSIS</u>

<u>Juror Bias</u>

McKnight argues that the trial court erred by failing to dismiss a juror due to her connection with the prosecution's witness. For this proposition, McKnight relies on *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984), which holds that "to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." "The requirement of an impartial jury is met when the prospective juror has given final,

unequivocal assurances, deemed credible by the judge, that for purposes of deciding the case, she can set aside any opinion she might hold, relinquish her prior beliefs, or lay aside her biases or her prejudicial personal experiences." *U.S. v. Taylor*, 777 F.3d 434, 441 (7th Cir. 2015).

"Many of the rules that require excusing a juror for cause are based on implied bias, rather than actual bias. For example, a court must excuse a juror for cause if the juror is related to one of the parties in the case, or if the juror has even a tiny financial interest in the case. Such a juror may well be objective in fact, but the relationship is so close that the law errs on the side of caution." *U.S. v. Polichemi*, 219 F.3d 698, 704 (7th Cir. 2000). "On the other hand, courts have declined to find implied bias when a juror was personally acquainted with a witness provided no actual bias existed." *Tinsley v. Borg*, 895 F.2d 520, 528–29 (9th Cir. 1990) (collecting cases).

After the jury was paneled but before opening arguments, the trial court received a note from one of the jurors, Carrie Bechtel, which was discussed as follows:

> **The Court:** Ms. Bechtel, you gave me a note this morning. I furnished a copy of the note to each of the lawyers. You've indicated you're acquainted with Heather Turner, who you believe is the spouse of Shawn Turner. I think you're correct.  Now the fact that you know Heather Turner, will that in any way affect your ability to be fair to Mr. McKnight and to the State of Indiana in this matter?
>
> **Juror:** I don't believe so. I don't know her spouse very well. I only met him on one occasion, so I don't -- I feel like Heather is trustworthy. I assume she has a trustworthy spouse, but I still feel like I can be impartial.
>
> **The Court:** You still feel you can be impartial.
>
> **Juror:** Sure.

**The Court:** All right. The fact that you have met Shawn Turner, who may or may not be a witness in this matter, will that in any way affect your ability to be fair to both sides?

**Juror:** No.

**The Court:** [Prosecution], do you have any questions?

**Prosecution:** No, your Honor.

**The Court:** [Trial counsel], do you have any questions?

**Trial Counsel:** Ms. Bechdel, my question would be having met Mr. Shawn Turner and knowing his wife and knowing her through a relationship that you had being at a church organization, do you think you'd give his testimony any more credibility than anybody else who would take the stand?

**Juror:** I mean, I don't think so, no.

* * *

**Trial Counsel:** Your Honor, if I'd known this prior to today, I think I would have used my peremptory. I don't have any peremptories left. I wouldn't have had any near the end, but she was not near the end. She was closer toward the middle. Being that the relationship was through a church relationship with the wife and it had been in the discussion group some time, I know I would have struck her earlier on.

**Prosecution:** Oh, your Honor, that doesn't say a discussion group for some time. It says that they have been in a discussion group at a local church organization. And to Monday morning quarterback a peremptory strike seems a little bit unfair considering I think other jurors said they knew people even sitting at my table and that wasn't used. So she said she could be fair.

**The Court:** Your objection would be if you would have known that she knew the wife of Shawn Turner and she was in a discussion group with her, you would have struck her in jury selection. Why didn't you ask?

**Trial Counsel:** We asked if they knew any of the names, and, at the time, she said she was unaware. She didn't realize it until afterwards. She was asked if she knew Shawn Turner. She was asked if she knew any of the

names of people that might have been called. She wasn't aware. She didn't even know when she was asked if she knew police officers.

**The Court:** She didn't say she was well acquainted with Shawn Turner. She said she met him once at a wedding reception in the note. Isn't that correct?

**Trial Counsel:** Yes, your Honor. But she knew the wife and she had some sort of relationship with the wife and then had met him thereafter. I just reiterate my objection as the direction I would have gone if I had known that at the time. And she didn't say I know I could be impartial. She said I think I could be impartial.

**Prosecution:** She said she could be fair.

**The Court:** Over the objection of the defendant, Ms. Bechtel will continue as a juror. She said in no uncertain terms that she could be fair, and I think we all need to keep in mind that the Supreme Court has indicated in some of their decision that these jurors have a right to serve also, which she's willing to serve. She's been here all day yesterday. She's here today, and she's ready to go. If she said she couldn't be fair because of her acquaintance with the wife of a witness, I would be with you on that, [trial counsel], but that's not what she said. She said she believed she could be fair.

Trial Tr. 28-33.

On direct appeal, McKnight argued that the trial court should have removed the juror on the basis of implied bias due to the relationship between the juror and the witness. ECF 36-6 at 11-15. The Court of Appeals of Indiana rejected this claim, reasoning that the relationship between the juror and the witness was casual and that she disclosed the relationship to the trial court as soon as she recognized it. ECF 36-8 at 5-6. The appellate court further observed that the juror had represented that she could be impartial and fair and that nothing in the record suggested that the trial court's decision to credit these representations was an abuse of discretion. *Id.*

After reviewing the record, the court cannot find that the State courts made an unreasonable determination with respect to the decision to not remove the juror. The juror's testimony contains ample support for the determination that the juror was not actually biased. Further, other courts have found similarly casual relationships insufficient to establish implied bias. *See e.g., Manuel v. MDOW Ins. Co.*, 791 F.3d 838, 842 (8th Cir. 2015) (juror knew two witnesses as a former teacher); *U.S. v. Mitchell*, 690 F.3d 137, 150 (3d Cir. 2012) (coworker of two police officers who served as key witnesses); *U.S. v. Bradshaw*, 787 F.2d 1385, 1387 (10th Cir. 1986) (juror conducted business with witness). Therefore, the claim of implied bias is not a basis for habeas relief.

<u>Controlled Buy Witness</u>

McKnight argues that he is entitled to habeas relief because trial counsel did not adequately investigate or cross-examine the prosecution's key witness, Mickie Rhymer, with respect to her pending criminal charges, criminal history, mental health, and drug use. Second, McKnight argues that the prosecution failed to disclose Rhymer's criminal history. Third, McKnight argues that he is entitled to habeas relief because trial counsel coerced him to sign a plea agreement based on the false information that he could be subject to consecutive sentences on five counts of cocaine dealing. He maintains that trial counsel's coercion resulted in his signing of a plea agreement, which caused the prosecution and trial counsel to neglect their pretrial obligations with respect to Rhymer, which, in turn, prejudiced him at trial after he withdrew from the plea agreement. As mentioned above, McKnight did not raise the claim that trial counsel

coerced him into pleading guilty in his post-conviction petition but asserts that the court should excuse the procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012). In determining whether *Martinez* applies, the pertinent question is whether the claim is a substantial one. *Id.* at 9.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland,* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "Impeachment evidence . . . as well as exculpatory evidence, falls within the *Brady* rule." *U.S. v. Bagley*, 473 U.S. 667, 676 (1985). "[F]avorable evidence is material, and constitutional error results from its suppression

by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

At trial, the prosecution presented Shawn Turner, a police officer, who testified that, on March 31, 2006, he worked with Mickie Rhymer to set up a controlled buy of a quarter-ounce of cocaine from McKnight. Trial Tr. 48-67. Prior to her arrival at McKnight's residence, Officer Turner searched Rhymer's person and vehicle for contraband but found none. *Id.* He provided her with a recording device and five hundred dollars to complete the purchase and to satisfy a pre-existing debt. *Id.* She went to McKnight's residence in her vehicle with another officer as a passenger. *Id.* After Rhymer completed the transaction, she returned to her vehicle, where police officers searched her again and retrieved the recording device and confiscated what she had purchased from McKnight. *Id.*

Rhymer testified, consistent with Turner's testimony, that, on March 31, 2006, she participated in a controlled buy. Trial Tr. 87-104. She testified that the transaction lasted for about five minutes, and she received more than a quarter ounce of crack cocaine from McKnight. *Id.* She confirmed that the contents of the audio recording accurately reflected her interactions with McKnight. *Id.* On cross-examination, Rhymer testified that she agreed to participate in the controlled buy to avoid criminal charges. *Id.* at 104-09. Two police officers, who the transcript does not identify by name due to their undercover work, testified about the controlled buy consistent with Turner and Rhymer's testimony. *Id.* at 112-32.

13

Dewey Murdick, a forensic analyst, scientifically verified that the confiscated substance obtained from McKnight during the controlled buy was crack cocaine. *Id.* at 147-55. Wanda Sheppler, a forensic analyst, measured the crack cocaine at a weight of 8.709 grams. *Id.* at 138-45. On cross-examination, Sheppler testified that she did not know when the scales had been calibrated in relation to when she measured the crack cocaine. *Id.* at 145-47. According to Sheppler, the scales are tested at random intervals and had never been found to vary more than one or two millionths of a gram. *Id.*

At closing, trial counsel argued that Rhymer could have had the crack cocaine in her undergarments when she went to McKnight's residence and that there was no discussion about monetary payment on the audio recording. *Id.* at 205-09. He argued that the desire to escape criminal liability likely motivated Rhymer's testimony against McKnight. *Id.* He also questioned the absence of information regarding the accuracy of the scales used to weigh the crack cocaine. *Id.*

At the post-conviction stage, McKnight established that Rhymer had a conviction for theft that was eight years old at the time of trial. PCR Ex. 2. Trial counsel testified at an evidentiary hearing about why he did not investigate Rhymer more thoroughly. PCR Tr. 114-15, 128, 139-40, 202-05, 214-15. According to this testimony, the parties had scheduled a deposition of Mickie Rhymer on the Friday before the Monday trial setting. *Id.* The parties were prepared to conduct the deposition during which the prosecution would have disclosed her relevant criminal history and trial counsel would have explored grounds for impeachment. *Id.* After the parties and Rhymer were present for a deposition, McKnight agreed to plead guilty and signed a written agreement, and the

14

parties canceled the deposition. *Id.* Trial counsel had advised McKnight to plead guilty because the prosecution had offered to dismiss three of the five counts and because trial counsel believed that the evidence supporting each count was strong. *Id.* By Monday, McKnight had decided to withdraw from the plea agreement, and the trial court denied the motion for continuance. *Id.*

On appeal, the Court of Appeals of Indiana found that trial counsel did not perform deficiently by not adequately investigating Rhymer. ECF 36-16 at 8-12. The appellate court reasoned that trial counsel had prepared to investigate her by deposition but cancelled due to McKnight signing a plea agreement and that he did not have any opportunity to conduct further investigation when he discovered that McKnight had changed his mind on the morning of trial and the trial court refused to grant a continuance. *Id.* The appellate court further noted that the cancelled deposition limited the extent of trial counsel's efforts to cross-examine Rhymer. *Id.* The appellate court also found that McKnight had not demonstrated prejudice as trial counsel established that Rhymer had a motive for testifying against McKnight and that McKnight's allegations regarding Rhymer's mental health and drug use were speculative and unsupported by evidence. The Court of Appeals of Indiana also rejected the claim that the prosecution failed to disclose Rhymer's criminal history, reasoning that the eight-year-old conviction was negligible in light of the credibility issues established by trial counsel and the overwhelming evidence against him. *Id.* at 19-21.

After reviewing the record, the State courts did not act unreasonably in determining that trial counsel did not perform deficiently by not adequately investigating and cross-examining Rhymer or that the prosecution did not fail to disclose material evidence of impeachment. When trial counsel cancelled the Rhymer deposition, McKnight had agreed to plead guilty, which would have necessarily required McKnight to admit that he had committed the crime. *See Patton v. State*, 517 N.E.2d 374, 375 (Ind. 1987) ("A guilty plea is an admission of guilt; it admits the incriminating facts alleged."). Considering this context, it is unclear what purpose continuing to investigate Rhymer for impeachment material would have served, and trial counsel had no opportunity to reopen the investigation at the time he learned that McKnight had decided against pleading guilty. *See e.g., Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."); *Earl v. Israel*, 765 F.2d 91, 93 (7th Cir. 1985) ("[O]f course if it is reasonable in the circumstances not to conduct a particular investigation, the lawyer's failure to do so will not establish ineffective representation.").

The court further agrees with the State court's assessment on prejudice and materiality given trial counsel's other efforts to impeach Rhymer, including her motive for cooperating with the prosecution, and the weight of the evidence against him, which included numerous witnesses involved in a controlled buy, an audio recording, and the scientific verification of the weight and contents of what McKnight had sold Rhymer

16

during the controlled buy. Therefore, these claims are not a basis for habeas relief. *See e.g.*, *Hockett v. Duckworth*, 999 F.2d 1160, 1170 (7th Cir. 1993) (no prejudice for failure to investigate when evidence against criminal defendant was overwhelming); *Carpenter v. U.S.*, 492 F. Supp. 2d 912, 919 (N.D. Ill. 2007) (same).

Additionally, the court finds that McKnight has not demonstrated that his claim regarding trial counsel's advice to plead guilty is substantial. Broadly speaking, when a defendant has five pending criminal cases, recommending a guilty plea based on the prosecution's offers to dismiss three of the five charges after concluding that the evidence supporting each charge is strong seems a reasonable strategic decision. *See e.g.*, *Miller v. U.S.*, 940 F.3d 371, 375 (7th Cir. 2019) (suggesting that trial counsel should consider strength of the prosecution's case for guilty plea advice); Fed. R. Crim. P. 11(c)(1) (suggesting that the prosecution's offer to dismiss other charges is a reasonable factor for trial counsel's consideration for guilty plea advice).

Though McKnight testified that trial counsel falsely informed him that he could receive consecutive sentences for these charges, the Elkhart Circuit Court found that this testimony was not credible. ECF 36-16 at 11. Pursuant to 28 U.S.C. § 2254(e)(1), this credibility finding is entitled to a presumption of correction unless rebutted by clear and convincing evidence, and McKnight cites no such evidence. Further, McKnight does not describe the specific details or context surrounding how trial counsel provided this information. Nor does he explain why he believes this information is false either by detailing how the State courts decide whether to impose consecutive or concurrent sentences or by providing information about his other charges or any other factors that

would be relevant to that decision-making process. Moreover, as previously discussed, the State court reasonably determined that obtaining information about Rhymer's prior conviction would not have been likely to change the outcome of the trial, so it is unclear how the advice to plead guilty prejudiced McKnight. Because the claim regarding trial counsel's advice to plead guilty is insubstantial, it remains procedurally defaulted. *See e.g., Hockett*, 999 F.2d at 1170; *Carpenter*, 492 F. Supp. 2d at 919.

Failure to Object

McKnight argues that trial counsel erred by failing to object to the admission of an audio recording of the controlled buy on the basis that it was unintelligible and that appellate counsel erred by failing to raise the admissibility of the audio recording on direct appeal. He maintains that this audio recording caused him prejudice because it contained unintelligible portions that would lead the jury to engage in speculation and because it included McKnight's statements about other drug transactions that were not related to the criminal charge that was the subject of the trial.

At the post-conviction stage, trial counsel testified that he did not believe that the court would have sustained an objection to the audio recording given his experience with other audio recordings at other trials. PCR Tr. 183-90. He further testified that he declined to object because it may have raised the jury's suspicions and because he believed that the better strategy was to allow the jury to hear it and to rely on the poor quality of the recording to argue that the prosecution had not satisfied its burden of proof. *Id.*

The Court of Appeals of Indiana rejected this ineffective assistance claim, reasoning that trial counsel's decision to refrain from objecting was a reasonable strategic decision. ECF 36-16 at 12-13. The appellate court further found a lack of prejudice because the objection would not have been sustained because it was sufficiently intelligible for admission and noted that it was cumulative of the other evidence at trial. *Id.* Based on the same reasoning, the appellate court also rejected the claim that appellate counsel should have challenged the admissibility of the audio recording on direct appeal. *Id.* at 15-16.

Under Indiana law, "[t]o be admissible at trial, a recording must be of such clarity as to be intelligible and enlightening to the jury." *Dearman v. State*, 743 N.E.2d 757, 762 (Ind. 2001). "However, every word of a recording need not be intelligible." *Id.* "Rather, the tape recording, taken as a whole, must be of such clarity and completeness to preempt speculation in the minds of the jurors as to its content." *Id.* The court has reviewed the audio recording. PCR Ex. 3. While it contains unintelligible portions, the contents are sufficiently intelligible for the purpose of identifying Rhymer and McKnight's voices and the subject matter of their conversation -- a monetary transaction. Given the futility of the objection and the potential negative reaction from the jury, the court cannot find that the State courts' determinations on these claims were unreasonable. *See Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015) ("performance was not deficient by failing to make a futile objection"); *Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003) (whether to lodge an objection is generally a matter of trial strategy).

McKnight also argues that trial counsel erred by failing to move for a directed verdict based on insufficient evidence on the weight of the cocaine and that appellate counsel erred by failing to raise this issue on direct appeal. He argues that the prosecution did not establish that the scales used by the forensic analyst to measure the weight of the crack cocaine had been properly calibrated.

At the post-conviction stage, the Court of Appeals of Indiana rejected this claim, reasoning that the prosecution was not required to prove the exact dates of the calibration or that the scales were calibrated immediately before or after they were used to measure contraband. ECF 36-16 at 13-15. The appellate court found that the forensic analyst's testimony regarding periodic calibration and the history of only minor variations were sufficient to serve as a foundation for testimony about the weight of the crack cocaine and that trial counsel addressed the absence of more specific information regarding calibration on cross-examination and during closing arguments. *Id.* The appellate court further observed that McKnight's charged crime required only that the prosecution prove that he had three or more grams of crack cocaine and that McKnight had offered nothing to suggest that the measurement of 8.709 grams was inaccurate to the point that it would have likely affected the outcome of his trial. *Id.*

McKnight was charged with dealing three or more grams of cocaine. Direct Appeal App. 5. Under Indiana law, the test for sufficiency of the evidence claims is as follows:

> When sufficiency of the evidence supporting a criminal conviction is challenged on appeal, we apply a narrow standard of review. We neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we

> look at the evidence most favorable to the State together with all
> reasonable inferences to be drawn therefrom. If there is substantial
> evidence of probative value from which the jury could have reasonably
> inferred guilt beyond a reasonable doubt, the conviction will be affirmed.

*Maynard v. State*, 513 N.E.2d 641, 643 (Ind. 1987). Given this narrow standard of review, Sheppler's testimony that, according to the scale, the crack cocaine weighed 8.709 grams and that the scales had never been found to vary more than one or two millionths of a gram was sufficient to establish that crack cocaine retrieved from Rhymer after the controlled buy was three or more grams. Consequently, the court cannot find that the State courts determination on the claim that trial counsel and appellate counsel did not raise a sufficiency of the evidence argument based on the calibration of the scales was unreasonable. Therefore, these claims are not a basis for habeas relief.

<u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging McKnight to proceed further.

For these reasons, the court DENIES the amended habeas corpus petition (ECF 6); DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule

11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on September 23, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT